UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

**CHARLENE RENEÉ GIBBON**  CASE NO. 11-11694

DEBTOR

CHAPTER 7

**TOWER CREDIT, INC.**

PLAINTIFF

V.  ADV. NO. 11-1109

**CHARLENE RENEÉ GIBBON**

DEFENDANT

### MEMORANDUM OPINION

Tower Credit, Inc. ("Tower") sued for a determination that its claim against debtor Charlene Reneeʹ Gibbon is not dischargeable under 11 U.S.C. §523(a)(2)(A) and (B). This memorandum opinion sets forth the reasons the obligation is nondischargeable.

FACTS

Ms. Gibbon borrowed $8,524.00 from Tower to buy a 2001 Acura MDX on February 28, 2011.[1] She defaulted on the loan before filing chapter 7 on October 27, 2011. Tower did not obtain a judgment on the debt prepetition.

The debtor admitted signing the loan application,[2] a loan application addendum,[3] and a document Tower referred to as a loan application guaranty,[4] each of which included a statement

---

[1] February 28, 2011 Promissory Note (Exhibit Tower 5).

[2] February 28, 2011 Tower loan application (Exhibit Tower 1).

[3] Tower loan application addendum (Exhibit Tower 3).

1

above the signature line that the information contained in the document was true, correct and complete. However, Gibbon insisted at trial that she herself had not completed the forms or even given all the information to Tower's representative before signing the documents.

Gibbon's loan application[5] listed only two creditors: Highlands Bank and Wells Fargo Home Mortgage. It did not reflect that the debtor owed any taxes to the Internal Revenue Service ("IRS"). Gibbons answered "no" to the loan application addendum's inquiry about delinquent tax obligations.[6] The debtor also declared on the loan application and addendum that her former husband paid her child support of $1,000 a month.

Tower's case is based on alleged misrepresentations on Gibbon's loan application. Tower president Stephen Binning testified that his company relied on the accuracy of the debtor's application when it decided to loan her money. Binning explained that Gibbon's child support income was significant in Tower's analysis because without it she would lack the funds to pay her living expenses and other debt, much less the new loan for which she'd applied.[7] Binning conceded that a modest tax debt, in his words "a couple of hundred dollars," might not adversely affect a loan application. However, he insisted that a substantial tax debt, such as Ms. Gibbon's $22,000 debt, would trigger denial of a loan because the IRS could place a levy on an applicant's income, affecting the applicant's ability to repay Tower.

The errors in Gibbon's loan application only surfaced after she sought bankruptcy protection. The debtor's Schedule E, listing priority unsecured claims, disclosed that Gibbon owed the government $22,000 for taxes and that the debt predated her February 28, 2011 loan

---

[4] Tower loan application guaranty (Exhibit Tower 2).

[5] Exhibit Tower 1, p.1.

[6] Exhibit Tower 2, question 7.

[7] Debtor's budget for Tower loan application (Exhibit Tower 4).

application.[8]  Schedule I identified the sources and amounts of the debtor's income, but did not show that she was receiving child support when she filed bankruptcy.[9]

At the meeting of creditors pursuant to Bankruptcy Code section 341(a) the debtor admitted signing the schedules[10] and acknowledged under oath that she had not received child support since about November 2010.[11]  Gibbon also conceded that she knew she owed the IRS money when she applied to Tower for the loan.[12]

Tower sued Gibbon claiming that the debtor's debt is nondischargeable under 11 U.S.C. §523(a)(2)(A) and (B).  Gibbon answered that she was receiving child support at the time of the loan and had in fact made all payments on the loan from its inception, including post-petition payments.  She counterclaimed for attorney's fees and costs under 11 U.S.C. §523(d) should she prevail on the dischargeability complaint.

Gibbon testified at trial that she knew she owed some taxes when she applied to Tower for the loan but did not know the amount of her tax debt.  She also stated that she did not think she was required to inform Tower about the unpaid federal taxes because she did not know the amount she owed.  She also testified that despite her testimony at the meeting of creditors and her sworn schedules, in fact she *was* receiving child support when she applied for the loan but stopped receiving it the following month.

---

[8]  According to schedule E (Exhibit Tower 7), Gibbon incurred the IRS debt between 2008 and 2011.

[9]  Schedule I (Exhibit Tower 8).

[10] Transcript from November 17, 2011 meeting of creditors, p. 20, ll. 13-18 (Exhibit Tower 6).

[11] Exhibit Tower 6, p. 31, ll. 18-25; p. 32, ll, 1-10.

[12] Exhibit Tower 6, p. 31, ll. 7-16.

3

ANALYSIS

I.  *Tower Proved Its Debt is Nondischargeable Under 11 U.S.C. §523(a)(2)(A)*

Bankruptcy Code section 523(a)(2)(A) excepts from discharge a debt:

for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by —

>   (A) False pretense, a false representation, or actual fraud, other than a statement respecting the debtor's... financial condition...

Debts within section 523(a)(2)(A) are those obtained by fraud "involving moral turpitude or intentional wrong, and any misrepresentations must be knowingly and fraudulently made." *Gen. Elec. Cap. Corp. v. Acosta,* 406 F.3d 367 (5th Cir. 2005), citing *In re Martin*, 963 F.2d 809, 813 (5th Cir. 1992).

To prevail under 11 U.S.C. §523(a)(2)(A), Tower must prove that: (1) the debtor made representations; (2) the debtor knew they were false when they were made; (3) the debtor made the representations with the intention and purpose to deceive the creditor; (4) the creditor relied on the representations; and (5) the creditor sustained losses as a proximate result of the representations. *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1293 (5th Cir. 1995), citing *In re Bercier*, 934 F.2d 689, 692 (5th Cir. 1991).

Tower has established that Gibbon's debt to it is not dischargeable under 11 U.S.C. §523(a)(2)(A). Gibbon's loan application falsely stated that her only creditors were Highlands Bank and Wells Fargo Home Mortgage, when she also knew of her federal tax debt. She also misrepresented to Tower that she was receiving child support. By signing the application warranting in several places the truth of her statements, the debtor knowingly gave Tower false information to obtain the loan. "When it is not disputed that a loan application was signed by the

4

[d]ebtor, then the contents of the application should, in general, be attributed to the [d]ebtor and entitled at least to great weight, and perhaps decisive effect." *In re Butski*, 184 B.R. 193, 195 (Bankr. W.D.N.Y. 1993), citing *In re Kabel*, 184 B.R. 422, 425 (Bankr. W.D.N.Y. 1992).

Gibbon's inconsistent statements about the child support payments on the loan application, on the bankruptcy schedules, at the 341 meeting and at trial evidence a reckless disregard for the accuracy of her representations to Tower and further support a finding and conclusion that she intended to deceive the lender.[13]

The debtor's misrepresentation on Schedule E, made under penalty of perjury, that she had no tax debt contradicts her statement on the Tower loan application that she had only two creditors when she applied for the loan. Gibbon's explanation at trial for this discrepancy – that she did not know the *amount* of her tax debt when she applied for the loan, and so did not feel obligated to disclose it – is simply not credible.

In combination, the evidence supports an inference and finding that Gibbon intended to deceive Tower.

Bankruptcy Code section 523(a)(2)(A) also requires that Tower prove it *justifiably* relied on the debtor's representations. *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed. 2d. 351 (1995). Justifiable reliance is gauged by "an individual standard of the plaintiff's own capacity and the knowledge which he has, or which may fairly be charged against him from the facts within his observation in the light of his individual case." *In re Vann*, 67 F.3d 277, 288 (quoting *Prosser & Keaton on Torts* at 751). "It is only where, under the circumstances, the facts should be apparent to one of the plaintiff's knowledge and intelligence from a cursory glance, or he has

---

[13] Because direct proof of a debtor's intent to deceive is "nearly impossible to obtain, the creditor may present evidence of surrounding circumstances from which intent may be inferred." *In re Reynolds*, 193 B.R. 195, 200 (D.N.J. 1996), quoting *Matter of Van Horne*, 823 F.2d 1285, 1287 (8th Cir. 1987). Lack of care when signing loan documents also indicates a reckless disregard for the accuracy of the information in the documents, and in turn supports a finding that the debtor intended to deceive for purposes of 11 U.S.C. §523(a)(2)(A). *Butski* at 195.

5

discovered something which should serve as a warning that he is being deceived, that he is required to make an investigation on his own." *Id.* at 283 (quoting *Prosser & Keaton on Torts* at 752).

Tower proved that it justifiably relied on the debtor's loan application. No evidence established that Tower should have anticipated that Gibbon was deceiving it so as to warrant its further investigation of her application.

II. *Tower Proved that Gibbon's Debt is Nondischargeable Under 11 U.S.C. §523(a)(2)(B)*

Tower also claims the debtor's obligation is nondischargeable under 11 U.S.C. §523(a)(2)(B), which renders debts for money, property, services, or an extension, or refinancing of credit nondischargeable to the extent obtained by—

(A) use of a statement in writing —

    (i) that is materially false;

    (ii) respecting the debtor's or an insider's financial condition;

    (iii) on which the creditor to whom the debtor is liable for such...credit reasonably relied; and

    (iv) that the debtor caused to be made or published with intent to deceive.

*Matter of Norris,* 70 F.3d 27, 29 (5th Cir. 1995).

Tower proved that the debtor's loan application contained materially false statements that render her debt to Tower nondischargeable under Bankruptcy Code section 523(a)(2)(B).

A written statement is materially false for purposes of section 523(a)(2)(B) if it "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Norris,* 70 F.3d at 30, quoting *In re Jordan*, 927 F.2d 221, 224 (5th Cir. 1991).

The credible evidence established that the debtor's statements on the Tower loan application about her income and debts were untruthful. Binning testified that accurate information concerning the debtor's child support income and tax liability was important to Tower's decision to extend credit to Gibbon. By signing the application warranting the accuracy and completeness of the information she gave Tower, Gibbon misrepresented her financial condition for the purpose of 11 U.S.C. §523(a)(2)(B).[14]

Tower also proved that Gibbon intended to deceive it through the materially false statements on her loan application and related documents. "Intent to deceive may be inferred from the totality of the circumstances." *Byrd v. Bank of Mississippi*, 207 B.R. 131, 138 (S.D. Miss. 1997), citing *In re Jordan*, 927 F.2d 221, 226 (5th Cir. 1991) (overruled on other grounds, *In re Coston*, 991 F.2d 257, 260 (5th Cir. 1993)). The debtor made several inconsistent statements about her child support income and her federal tax debt; her explanation of those inconsistencies was implausible. The evidence supports a finding that she intended to deceive Tower concerning her financial condition to obtain the loan.

Binning's testimony that Tower needed accurate information about Gibbon's income and debts to make a loan decision prove that Tower relied on her false statements. Tower must also prove that it *reasonably* relied on the debtor's misrepresentations.

> The reasonableness of a creditor's reliance … should be judged in light of the totality of the circumstances. The bankruptcy court many consider, among other things: whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; whether there were any "red flags" that would have alerted an ordinarily prudent lender to the

---

[14] *In re Oh,* 278 B.R. 844, 860 (Bankr. C.D. Cal. 2002) ("[p]referring to know as little as possible about a transaction in which he really did not want to participate, the [d]ebtor simply signed whatever was put in front of him without any regard for its truth or falsity. A debtor cannot escape liability under section 523(a)(2)(B) by firmly putting his head in the sand and later claiming not to have known of the falsity of representations that were made on his behalf while his head was covered."); *Cadle Co. v. Orsini*, 2007 WL 1006919 at *5 (Bankr. E.D. Tex. 2007) (citation omitted) ("[a]s long as the written statement is written, signed, adopted or used by the debtor, the basic precondition concerning the writing requirement to the non-dischargeability complaint under section 523(a)(2)(B) is met.")

7

possibility that the representations relied upon were not accurate; and whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.

*Matter of Coston*, 991 F.2d 257, 261 (5th Cir. 1993).

No information the debtor gave Tower reasonably can be characterized as a "red flag" that warranted the plaintiff's further inquiry into the statements on the defendant's credit application. Accordingly Tower did not unreasonably rely on the debtor's representations regarding her income and debts for purposes of 11 U.S.C. §523(a)(2)(B).

## CONCLUSION

Debtor Charlene Gibbon's debt to Tower Credit is nondischargeable under 11 U.S.C. §523(a)(2)(A) and 11 U.S.C. §523(a)(2)(B). Because Tower prevailed on its dischargeability complaint, the debtor is not entitled to attorney's fees under 11 U.S.C. §523(d) and her counterclaim is dismissed.

Baton Rouge, Louisiana, September 4, 2012.

**s/Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE

8